UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| SCOTT THOMAS BERRY, | Case No. 18-cv-1394 (DWF/LIB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| WARDEN R. MARQUES, | |
| Respondent. | |

---

This matter came before the undersigned United States Magistrate Judge pursuant to a referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, as well as, upon Petitioner Scott Thomas Berry's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [Docket No. 1].

The Federal Bureau of Prisons ("BOP") determined that placing petitioner Scott Thomas Berry at a residential re-entry center ("RRC") effective June 5, 2018, would be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). Approximately a month before that scheduled placement date, the BOP determined that Berry's RRC placement should be delayed until July 31, 2018. Berry believes the revision of the BOP's plans is unlawful, and he has filed the present petition for a writ of habeas corpus requesting that the Court require the BOP to reinstate its prior placement date. See, 28 U.S.C. § 2241. Due to the time-sensitive nature of the claims presented by Berry, this Court ordered expedited briefing on the matter.[1]

---

[1] A federal prisoner generally must exhaust administrative remedies before seeking habeas corpus relief, see, Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009), but the requirement is not jurisdictional, see, Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007), and can be waived "where its imposition would prejudice the

1

For the reasons set forth below, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED** with prejudice.

## I. BACKGROUND

The Second Chance Act of 2007 provides (in part) that

> [t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Although 18 U.S.C. § 3624(c) contemplates that prisoners should generally be moved in the final months of their sentences from traditional prisons to transitional facilities such as RRCs, neither § 3624(c) nor any other statute <u>entitles</u> a prisoner to such a placement for any length of time. Instead, the BOP is given near-total discretion to "designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . ." 18 U.S.C. § 3621(b); <u>accord</u> 18 U.S.C. § 3624(c)(4) (noting that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621"). That said, in designating the place of imprisonment, the BOP is instructed by statute to consider the following five factors:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence —

---

prisoner's subsequent court action because of the unreasonable timeframe involved in the administrative remedy." <u>Simon v. LaRiva</u>, No. 16-cv-0146 (ADM/TNL), 2016 WL 1626819, at *4 (D. Minn. Mar. 10, 2016) (quotation omitted). Berry could not reasonably have been expected to fully exhaust administrative remedies prior to commencing this habeas action. The exhaustion requirement should therefore be excused.

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Petitioner pled guilty in this District to one count of conspiracy to distribute methamphetamine, and in December 2016, he was sentenced to a 36-month term of imprisonment. See, United States v. Berry, No. 15-cr-0260 (9) (PAM/TNL) (D. Minn. December 30, 2016). He is currently incarcerated at the Federal Correctional Institution near Sandstone, Minnesota, with a projected release date of December 1, 2018. (See, Declaration of Jon Gustin (hereafter "Gustin Decl."), [Docket No. 11], at ¶ 22). Berry's projected release date is not at issue in these proceedings; what is at issue is instead where Berry should be placed prior to that release date.

Berry had previously been assigned by the BOP a recommended RRC placement date of June 5, 2018, with home confinement to follow beginning August 15, 2018. (See, Ex. C, [Docket No. 11-3], at 8). Recently, however, "Berry's [RRC] recommendation . . . had to be reduced because resources were not available in the community for a longer placement, and a placement date of July 31, 2018, was selected." (Gustin Decl., [Docket No. 11], at ¶ 24). The reason resources were no longer "available in the community for a longer placement," according to the BOP, was twofold. Id.

First, the BOP recently discontinued sixteen RRC contracts that had been deemed "underutilized," thereby eliminating about one percent of the BOP's total available RRC bed space. (Gustin Decl., [Docket No. 11], at ¶ 12). The RRC to which Berry had been assigned was

3

not among the facilities for which the BOP discontinued usage, but the effect of the discontinuation was nevertheless a restriction in overall space available, resulting in shorter RRC placements for prisoners everywhere. (Id. at ¶ 13). Second, the BOP had previously been "placing inmates into pre-release placement at an individual RRCs [sic] at a rate above the contract operating capacity," a practice that the BOP recently determined "needed to end." (Id. at ¶ 14). The resulting contraction in available RRC space "necessitated an individualized re-review of each inmate under § 3621(b), with additional weight placed on [the] § 3621(b)(1) factor" of the resources of the facility contemplated than "had previously been done." (Gustin Decl., [Docket No. 11], at ¶ 15). Many prisoners, including Berry, saw their scheduled RRC placements postponed following this individualized re-review.

Berry contends the postponement of his RRC placement date was unlawfully effected. His petition for a writ of habeas corpus raises four grounds for relief, but his arguments can be summarized as follows:

- The BOP inappropriately considered factors other than those set forth by federal statute in altering his RRC placement date—that is, internal BOP budgetary concerns about RRC utilization, as explained above and as first set forth in an internal memo prepared by Acting Assistant Director for the Reentry Services Division Hugh J. Hurwitz; and

- The resulting nationwide changes effected by the BOP violate the requirements of §§ 3621(b) and 3624(c) that placements be made by the BOP on an individualized basis.

## II. ANALYSIS

As an initial matter, the Government argues that Berry is not entitled to review of its placement decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This is true. See, 18 U.S.C. § 3625. "As such, the BOP is correct that this Court does not have jurisdiction to review the ultimate discretionary decision by the BOP under §§ 3621(b) or 3264(c) to place [the petitioner] in an RRC or in home confinement placement." Ambrose v. Jett,

4

No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013). But while the Court cannot review the BOP's ultimate placement decision, it can review whether "the BOP's action is contrary to established federal law, violates the Constitution, or exceeds statutory authority." Id.; accord 28 U.S.C. § 2241. Federal law constrains in certain respects the processes by which the BOP may arrive at its placement decisions and the factors it may (or must) consider in arriving at those decisions. Although the Court cannot review the BOP's ultimate placement decision, it can review to ensure that the process by which the placement was made comported with federal law and when it does not, the BOP can be made to redo its decision in a manner consistent with federal law. See, e.g., Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004).

Berry points to several putative deficiencies in the BOP's decision process that, if proved, would require the Court to order the BOP to reconsider its decision regarding postponed RRC placement. The evidentiary record in the present case, however, fails to establish any of these supposed deficiencies.

First, Berry contends that the BOP failed to consider in good faith the five § 3621(b) factors in postponing his RRC placement date until July 31, 2018. His foundation for so arguing is flimsy; there is no evidentiary basis in the record to conclude that the five factors went ignored in altering Berry's RRC placement date. It is undisputed that that the BOP considered those factors in arriving at the original June 5, 2018 placement date. Berry latches onto the fact that the BOP, by its own admission, placed "additional weight" on the § 3621(b)(1) factor when reevaluating his RRC placement, but this does not mean that "the resources of the facility contemplated" was the only factor considered by the BOP at that time. Instead, the statement reflects that the remaining § 3621(b) factors had remained unchanged from the time that the

5

original placement date was set, and that a reemphasis on § 3621(b)(1), in light of the budgetary limitations cited by the BOP, would necessarily result in a reduction in time Berry would be placed at the RRC. Put another way, the fact that one § 3621(b) factor was reconsidered does not mean that the other factors did not ultimately enter into the decision.

Second, Berry argues that BOP considered factors other than those outlined by § 3621(b)—specifically, internal BOP budget considerations as set forth in the Hurwitz Memorandum. The Eighth Circuit has been clear, however, that § 3621(b) does not "preclude the consideration of factors beyond those set forth in the statute." Miller v. Whitehead, 527 F.3d 752, 757–58 (8th Cir. 2008) (citing Levine v. Apker, 455 F.3d 71, 86 (2d Cir. 2006)); accord Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004). Thus, even assuming that the budgetary concerns identified in the Hurwitz Memorandum cannot be fitted within the five factors outlined in § 3621(b), the BOP may nevertheless take those concerns into account in determining placements.[2]

Third, Berry argues that § 3624 requires he spend an appropriate term "under conditions that will afford [him] a reasonable opportunity to adjust to and prepare for [] reentry . . . into the community," 18 U.S.C. § 3624(c)(1), and that the BOP has already determined that the lengthier RRC placement is necessary to provide such an opportunity. However, § 3624 is clear that the § 3621(b) factors remain controlling. See, 18 U.S.C. § 3624(c)(4). Further, it does not follow that because the BOP previously determined that a longer placement provided "a reasonable opportunity" for Berry to readjust to reentry to the community, a shorter placement cannot

---

[2] It is worth noting that the Hurwitz Memorandum does not establish upper limits on RRC placement length, which have in some instances been found inconsistent with § 3621(b). See, e.g., Fults, 442 F.3d at 1092. Although the memorandum did note that RRC placement length would generally decline under the new policies, it did not foreclose placements of any particular length. (See, Gustin Decl., [Docket No. 11], at ¶ 18).

provide such an opportunity as well.[3] And in any event, the BOP's obligations under § 3624(c)(1) extend only "to the extent practicable."

Finally, Berry argues that even if not entitled to the initial RRC placement date under §§ 3621 or 3624, the BOP should have conducted a separate review under 42 U.S.C. § 17541(a)(1). That provision—now recodified at 34 U.S.C. § 60541(a)(1)—provides that the BOP must "provide incentives for prisoner participation in skills development programs," and that one incentive for participation in such skills-development programs is "the maximum allowable period in a community confinement facility." At least one court has found that this provision creates an RRC placement procedures distinct from § 3624(c). See, Krueger v. Martinez, 665 F. Supp. 2d 477 (M.D. Pa. 2009); Hill v. Scism, No. 3:cv-11-0080, 2011 WL 705354, at *2–3 (M.D. Pa. Feb. 18, 2011) (citing Krueger). But this is distinctly the minority position, and it has repeatedly been rejected by Courts, including Courts in this District. See, e.g., Bania v. Roal, No. 11-cv-0925 (SRN/TNL), 2012 WL 1886485, at *4 (D. Minn. May 23, 2012). As explained in Bania, "[a] plain language interpretation of [§ 17541(a)(1)] supports the BOP's contention that it has discretion to decide whether the maximum allowable period at an RRC can serve as an incentive. Maximum time allotment in an RRC is only one of several incentives listed that may be awarded at the discretion of the BOP, as the statute allows for the Director of the BOP to offer any other incentive considered appropriate." Id. (citation and quotation omitted). As with § 3621(b) and § 3624, any incentive structure established pursuant to

---

[3] A close cousin of Berry's argument, and a claim at least suggested by his briefing, is that the persons within the BOP who set the original RRC placement date were better situated to determine the appropriate length of that placement, and that the later adjustment was made by persons further removed from Berry and his individual circumstances. The BOP cannot, consistent with § 3621(b), outsource placement decisions to third parties. See, Ambrose, 2013 WL 6058989, at *8. But nothing in § 3621(b) suggests that only the persons best situated within the BOP to make placement decisions (whatever that might mean in a given case) are authorized to make those decisions. The original RRC placement date was established by BOP officials; so too was the later RRC placement date. Each was consistent with § 3621(b).

§ 17541(a)(1) or 34 U.S.C. § 60541(a)(1) ultimately rests upon the broad discretion of the BOP. Bania, 2012 WL 1886485, at *4.

In short, Berry has failed to establish that the BOP acted contrary to law in his case. Accordingly, it is recommended that his habeas corpus petition be **DENIED**.

### III. RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The petition for a writ of habeas corpus of petitioner Scott Thomas Berry, [Docket No. 1] be **DENIED;** and

2. This action be **DISMISSED with prejudice**.

Dated: June 14, 2018                    s/Leo I. Brisbois
                                        Leo I. Brisbois
                                        United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See, Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).